**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK EUGENE MONTGOMERY,** | : | |
| Plaintiff | : | CIVIL ACTION NO. 4:11-CV-589 |
| vs. | : | (Complaint Filed 3/29/11) |
| **MICHAEL ASTRUE,** | : | |
| **COMMISSIONER OF SOCIAL** | : | (Judge Caputo) |
| **SOCIAL SECURITY,** | : | |
| Defendant | : | |

**MEMORANDUM**

**BACKGROUND**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Mark Eugene Montgomery's claim for social security disability insurance benefits and supplemental security income benefits. For the reasons set forth below we will affirm the decision of the Commissioner.

On March 5, 2008, Montgomery filed protectively[1] an application for disability insurance benefits and an application for supplemental security income benefits. Tr. 11, 73-74, 97-104, 107 and 112.[2] The applications were initially denied by the Bureau of Disability Determination[3] on August 7, 2008. Tr. 11 and 75-84. On October 8, 2008, Montgomery

---

[1] Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

[2] References to "Tr._" are to pages of the administrative record filed by the Defendant as part of his Answer on June 3, 2011.

[3] The Bureau of Disability Determination is a state agency which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration.

requested a hearing before an administrative law judge. Tr. 87-88.  After about 18 months had passed, a hearing was held on April 7, 2010. Tr. 48-70.  On April 15, 2010, the administrative law judge issued a decision denying Montgomery's applications. Tr. 11-25. On June 7, 2010, Montgomery filed a request for review with the Appeals Council and on February 3, 2011, the Appeals Council concluded that there was no basis upon which to grant Montgomery's request. Tr. 1-5.  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Montgomery then filed a complaint in this court on March 29, 2011. Supporting and opposing briefs were submitted and the appeal[4] became ripe for disposition on September 9, 2011,  when Montgomery elected not to file a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.  The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured."  It is undisputed that Montgomery met the insured status requirements of the Social Security Act through September 30, 2001. Tr. 11, 13, 112 and 119.  In order to establish entitlement to disability insurance benefits Montgomery was required to establish that he suffered from a disability on or before that date.  42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a)(2008); see Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

---

Tr. 76 and 81.

[4]Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

A review of the record in this case reveals that there is no medical evidence supporting Montgomery's claim that he was disabled prior to the date last insured. No treating or examining physician has opined that Montgomery had functional limitations that would have prevented him from engaging in gainful employment on or prior to September 30, 2001, the date last insured. In fact Montgomery filed a statement of material facts which does not mention any medical evidence prior to January 21, 2008. Doc. 11, Plaintiff's Statement of Material Facts. Consequently, we will affirm the administrative law judge's decision with respect to Montgomery's claim for disability insurance benefits without any further discussion.

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits.

Montgomery who was born in the United States on July 12, 1962,[5] has a seventh grade education and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 55, 101, 133 and 158.[6] During his elementary

---

[5] At the time of the administrative hearing and the administrative law judge's decision, Montgomery was 47 years of age and considered a "younger individual" whose age would not seriously impact his ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.963(c). Tr. 67. The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

[6] Although Montgomery at the administrative hearing claimed that he could not read "too much – enough to get by," the record reveals that Montgomery completed multiple Social Security Administration forms in legible handwriting. Furthermore, Montgomery did indicate on a Social Security Administration form that he could read, write, speak and
(continued...)

and secondary schooling, Montgomery attended regular education classes. Tr. 139.

Montgomery has past relevant work experience[7] as a laborer at a tree farm and various manufacturing companies. Tr. 115, 135 and 148.  The work was described by a vocational expert as unskilled, medium work as generally performed in the economy and as unskilled, heavy work as actually performed by Montgomery.[8]  Tr. 52.

---

[6](...continued)
understand the English language. Tr. 133.

[7]Past relevant employment in the present case means work performed by Montgomery during the 15 years prior to the date his claim for disability was adjudicated by the Commissioner.  20 C.F.R. §§ 404.1560 and 404.1565.

[8]The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) *Light work*.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as  loss of fine dexterity or inability to sit for long periods of time.

(continued...)

Records of the Social Security Administration reveal that Montgomery had reported earnings in 1979 , 1981, 1983 through 1996, 1998, 2000 and 2003. Tr. 113. Montgomery's total earnings during those years were $147,093.14. Id.  Montgomery's earnings in 1998 were $660.00, in 2000 $299.25 and in 2003 $2988.96. Id. Montgomery has not worked since September 30, 2003. Tr. 134.

Montgomery in his application for supplemental security income benefits alleges that  he became disabled on March 5, 2008,[9] because of Hepatitis C, hearing loss, chronic obstructive pulmonary disease, degenerative disc disease, diverticulitis, deep vein thrombosis, liver disease, polycystic kidney disease, high blood pressure, amputated fingers and anxiety. Tr. 55-59, 71, 75 and 134; Doc. 12, Plaintiff's Brief, p. 2. Montgomery contends that he cannot stand for long periods of time because of back pain and numbness in his legs. Tr. 134. He claims he has shortness of breath after walking for just a block or two and trouble going up stairs. Id.

---

[8](...continued)
    (c) *Medium work*. Medium work involves lifting no
    more than 50 pounds at a time with frequent lifting or
    carrying of objects weighing up to 25 pounds.  If
    someone can do medium work, we determine that
    he or she can do sedentary and light work.

    (d) *Heavy work*.  Heavy work involves lifting no more
    than 100 pounds at a time with frequent lifting or
    carrying of objects weighing up to 50 pounds. If
    someone can do heavy work, we determine that he
    or she can also do medium, light, and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

[9]Montgomery in his application for disability insurance benefits alleged that he became disabled on January 1, 2001. Tr. 101.

5

Montgomery at the administrative hearing testified that for approximately ten months, beginning in November 2008, he had experienced vomiting and weakness as a side effect from his weekly treatment for Hepatitis C.  Tr. 59.  However, he was able to care for his personal needs, including dressing and showering, and spent his days watching television. Tr. 61 and 155-156.  He admitted to a significant history of drug and alcohol abuse, stating that he last consumed alcohol three weeks earlier and last used marijuana one and half years earlier, when he began treatment for Hepatitis C. Tr. 64.  For over 30 years, Montgomery smoked approximately 2 packs of cigarettes per day. Tr. 415-416.  At the time of the administrative hearing Montgomery claimed he was smoking 8 cigarettes per day and that at one point he was smoking 2 ½ packs per day. Tr. 64.

In a document entitled "Function Report -Adult" Montgomery stated he lives with his mother. Tr. 155.  He admitted that he walks two blocks to visit friends twice a day for a total of three hours. Id.   Montgomery stated that he needed no special reminders to take his medicines or to take care of personal needs and grooming. Tr. 157.  Montgomery admitted preparing some of his own meals and noted that his mother prepares some of them. Id. Montgomery does his own laundry, cleans his room, does small household repairs and mows the lawn although he claimed that he only mows for 5 minutes at a time.  Id. Montgomery indicated that he goes out everyday and is able to go shopping, pay bills and count change. Tr. 158.  He occasionally goes fishing. Tr. 159.  Montgomery when given an opportunity to do so noted no problem with reaching, sitting, talking, understanding, following instructions, his memory and getting along with others.  Tr. 160.

Montgomery's alleged disability onset date of March 5, 2008, has no impact on Montgomery's application for supplemental security income benefits because

supplemental security income is a needs based program and benefits may not be paid for "any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met." See C.F.R. § 416.501. Consequently, Montgomery is not eligible for SSI benefits for any period prior to April 1, 2008.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008);  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance.  Brown, 845 F.2d at 1213.  In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064.  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[10] (2) has an impairment that is severe or a combination of impairments that is severe,[11] (3) has an

---

[10] If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

[11] The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1520(c) and 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential

(continued...)

impairment or combination of impairments that meets or equals the requirements of a listed impairment,[12] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[13]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

---

[11](...continued)
evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2).

[12] If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

[13] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

**DISCUSSION**

The administrative law judge as stated earlier issued his decision denying Montgomery benefits on April 15, 2010. The relevant evidence to review, consequently, precedes that date.

The administrative law judge at step one of the sequential evaluation process found that Montgomery had not engaged in substantial gainful work activity since January 1, 2001. Tr. 13. The administrative law judge noted that there was some evidence that Montgomery worked for a few months in 2003 but that that work was an unsuccessful work attempt and did not amount to substantial gainful activity. Id.

At step two of the sequential evaluation process, the administrative law judge found that Montgomery had the following severe impairments: "Hepatitis C; hearing loss; Chronic Obstructive Pulmonary Disease (COPD); anxiety; and degenerative disc disease[.]" Tr. 13. The administrative law judge found that Montgomery's kidney disease, liver disease, high blood pressure, deep vein thrombosis, finger amputations and diverticulitis were non-severe impairments. Tr. 14.

At step three of the sequential evaluation process the administrative law judge found that Montgomery's impairments did not individually or in combination meet or equal a listed impairment. Tr. 14–18. In so finding the administrative law judge relied on the opinions of Frank M. Mrykalo, Ed.D., a state agency psychologist, and Gerald A. Gryczko, M.D., a state agency physician. Tr. 308-320 and 351-357.

At step four of the sequential evaluation process the administrative law judge found that Montgomery could not perform his prior relevant unskilled, medium to heavy work as a laborer but that he had the residual functional capacity to perform a very limited range

of unskilled, light work. Tr. 18-23.  In fact the walking/standing requirements set by the administrative law judge are more in line with those of sedentary work. Id.   Specifically, the administrative law judge found that Montgomery could perform unskilled, light work which involved

> the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently.  The claimant can sit for six hours in an eight hour workday and can stand and/or walk for two hours.  The claimant can engage in occasional bending and stooping, but no climbing, kneeling, crawling, or balancing. The claimant can perform occupations that do not require exposure to unprotected heights, moving machinery or pulmonary irritants.  He can perform work involving simple, repetitive tasks that do not require contact with the general public and which do not require good bilateral hearing.

Tr. 18.  In concluding that Montgomery had the residual functional capacity to engage in this limited range of unskilled, light work, the administrative law judge relied on the opinion of Dr. Mrykalo and Dr. Gryczko, who reviewed Montgomery's medical records on behalf of the Bureau of Disability Determination.

At step five, the administrative law judge based on a residual functional capacity of a limited range of light work as described above and the testimony of a vocational expert found that Montgomery had the ability to perform unskilled, light work as a video monitor, visual inspector, and a packager, and that there were a significant number of such jobs in the local and regional economies. Tr.  24.

The administrative record in this case is 535 pages in length and we have thoroughly reviewed that record.  The administrative law judge did an adequate job of reviewing Montgomery's vocational history and medical records in his decision. Tr. 11-25. Furthermore, the brief submitted by the Commissioner sufficiently reviews the medical and vocational evidence in this case. Doc. 13, Brief of Defendant.

Montgomery argues that the administrative law judge erred (1) when he found that Montgomery had the residual functional capacity to perform light work and (2) in failing to give proper weight to the testimony of Montgomery. We find no merit in Montgomery's arguments.

The Social Security regulations require that an applicant for supplemental security income benefits come forward with medical evidence "showing that [the applicant] has an impairment(s) and how severe it is during the time [the applicant] say[s] [he or she is] disabled" and "showing how [the] impairment(s) affects [the applicant's] functioning during the time [the applicant] say[s] [he or she is] disabled." 20 C.F.R. §§ 404.1512(c) and 416.912(c). Montgomery failed to provide such evidence. No treating physician provided a statement indicating hat Montgomery prior to the date the administrative law judge issued his decision had functional limitations for the requisite continuous 12 month period[14] that would prevent him from engaging in the limited range of light work set by the administrative law judge.[15]

---

[14] As stated earlier in this memorandum to receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).

[15] On May 17, 2010, after the administrative law judge issued his decision a treating physician did provide a statement of Montgomery's functional abilities. Tr. 533-535. However, that statement does not indicate that Montgomery's limited functional abilities lasted or were expected to last for the continuous period of 12 months required by the Social Security Act. Furthermore, the statement of the treating physician is inconsistent. The treating physician stated that Montgomery can only sit for 1 hour and stand/walk for 1 hour in an 8-hour workday but that Montgomery can lift up to 10 pounds for 3-5 hours per 8-hour workday, lift 11-15 pounds for 1-2 hour per 8-hour workday, and carry up to 10 pounds fro 1-2 hours per 8-hour workday.

In fact the record contains a statement from a treating physician dated July 7, 2007, that Montgomery had the ability to work. Tr. 223. Also, Karen Thomas, M.D., a treating physician, on June 2, 2008, completed a form in which she stated that she observed no abnormal emotional symptoms during her contacts with Montgomery; Montgomery kept appointments, interacted appropriately with office staff, and had an appropriate appearance; Montgomery did not demonstrate difficulties performing daily activities on a sustained basis, such as shopping, cooking, cleaning, maintaining a residence, paying bills, personal care, health and hygiene; Montgomery did not demonstrate difficulties in his ability to get along with, to interact with, or to communicate with family, friends, neighbors, co-workers, employers or the general public; and Montgomery had no problem with concentration, persistence or pace. Tr. 303-304.

The record contains functional assessments from Dr. Mrykalo and Dr. Gryczko that support the administrative law judge's residual functional capacity determination. Tr. Tr. 308-320 and 351-357. The administrative law judge's reliance on those two opinions was appropriate. See Chandler v. Commissioner of Soc. Sec., 667 F.3d. 356, 362 (3d Cir. 2011) ("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]"). The administrative law judge appropriately took into account Montgomery's functional limitations in the residual functional capacity assessment.

The administrative law judge stated that Montgomery's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the ability to perform a limited range of unskilled, light work. Tr. 19. The administrative law judge was not required to accept Montgomery's subjective

14

claims regarding his physical and mental limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make). It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ." Walters v. Commissioner of Social Sec., 127 f.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility."). Because the administrative law judge observed Montgomery when he testified at the hearing on April 7, 2010, the administrative law judge is the one best suited to assess the credibility of Montgomery.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.


                                                 s/A. Richard Caputo
                                                 A. RICHARD CAPUTO
                                                 United States District Judge

Dated: June 28, 2012